# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs July 21, 2010

## STATE OF TENNESSEE v. ELMI ABDULAHI ABDI

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2008-B-1061     Steve R. Dozier, Judge**

**No. M2009-01614-CCA-R3-CD - Filed July 29, 2010**

The defendant, Elmi Abdulahi Abdi, was convicted by a Davidson County Criminal Court jury of aggravated robbery, a Class B felony, and sentenced to thirty years in the Department of Correction as a Range III, persistent offender. On appeal, he challenges the sufficiency of the evidence and the sentence imposed by the trial court. After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

William E. Griffith, Nashville, Tennessee (on appeal and at trial); Jason Gichner and Chase Smith, Assistant Public Defenders (at trial), for the appellant, Elmi Abdulahi Abdi.

Robert E. Cooper, Jr., Attorney General and Reporter; Lindsy Paduch Stempel, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Rachel Sobrero and Pamela Sue Anderson, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

## FACTS

This cases arises out of the robbery of the Crossland Economy Studio Hotel on Murfreesboro Pike in Nashville on January 1, 2008, for which the defendant was indicted

on one count of aggravated robbery.[1]

At trial, Zina Aboona, the victim, testified that she was a general manager with Extended Stay Hotels and was working when the hotel was robbed. The victim recalled that she opened the hotel the morning of New Year's Day and the first desk clerk arrived at 8:00 a.m. Soon after, the defendant walked into the lobby and approached the front desk, asking for a room. The victim immediately recognized the defendant when he walked in the door. She explained that she had a memorable encounter with the defendant on an occasion several years earlier at the same hotel. On both occasions, the victim noticed that the defendant spoke with a Somalian accent.

The victim informed the defendant that they were sold out from the previous night and, within a "split second," the defendant demanded money. The defendant put one hand in his pocket and placed it on the counter, and he made his other hand into the shape of gun and pointed it at the victim. The victim was convinced that the defendant had a gun in his pocket based on "the way that it pointed in the pocket." The victim gave the defendant $183.91 from the cash drawer. The defendant ordered the victim to get on the floor and not to look at him or he would shoot her. After the victim heard the defendant leave, she pressed the lock button for the door and called 911. The victim testified that she was "terrified" during the encounter.

The victim recalled that the day after the robbery, Detective Jeff Ball with the Metropolitan Nashville Police Department showed her a photographic lineup, from which she identified the defendant. The victim also identified the defendant in court and said that she was 100% positive he was the person who entered the hotel on January 1, 2008. She estimated that the encounter lasted approximately five minutes and said that the area was well-lit. The victim noted that the hotel had a surveillance system that captured the robbery, and she provided the footage to the police. The DVD of the encounter was played for the jury.

On cross-examination, the victim acknowledged that the robber was wearing mirrored sunglasses, a knit cap, and a jacket. She said that she did not remember the color of his pants or see what kind of car he drove. She also acknowledged that she did not actually see a gun.

Detective Barry Burk with the Metropolitan Nashville Police Department testified that he responded to the scene in this case and spoke with the victim. The victim related the

---

[1] The defendant was also indicted on one count of attempted aggravated robbery for an unrelated incident that occurred the same day. The trial court granted a defense motion to sever the offenses.

details of the aggravated robbery and allowed him to watch the surveillance video. Based on the video and his discussion with the victim, Detective Burk developed the defendant as a possible suspect.

Detective Jeff Ball testified that he collected the surveillance video from the hotel the day after the robbery. The victim came to the police station and viewed a photographic lineup, from which she identified the defendant. Detective Ball obtained a warrant for the defendant's arrest based on the victim's identification and other evidence, and he arrested the defendant around 9:00 p.m. on January 2, 2008. Detective Ball interviewed the defendant and, at one point, escorted the defendant to his office to show him the surveillance video from the hotel. An excerpt of the interview was played for the jury in which the defendant was asked upon returning to the interview room, "Well, what did you think?" and the defendant responded, "The person that looked like me is -- that's me."

On cross-examination, Detective Ball explained that the defendant was shown the surveillance video in his office because the interview room did not have the necessary equipment for watching a video. Detective Ball acknowledged that none of the suspects in the photographic lineup were wearing sunglasses or a hat even though the suspect was described as having worn sunglasses and a hat.

Following the conclusion of the proof, the jury convicted the defendant of aggravated robbery.

## ANALYSIS

### I. Sufficiency of the Evidence

The defendant challenges the sufficiency of the convicting evidence. He argues that he was not sufficiently identified as the perpetrator of the offense, and the State failed to prove that he possessed a weapon or an article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon. In considering this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues

-3-

are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

As pertinent here, aggravated robbery is the "intentional or knowing theft of property from the person of another by violence or putting the person in fear," Tenn. Code Ann. § 39-13-401(a), "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon[.]" Id. § 39-13-402(a)(1).

In the light most favorable to the State, the evidence shows that the defendant walked into the hotel and, after inquiring about a room, demanded that the victim give him money. The defendant placed one hand in his pocket and put it on the counter and then placed his other hand into the shape of a gun and pointed it at the victim. After the victim gave the defendant money from the cash drawer, the defendant ordered her to the ground and threatened to shoot her if she looked at him. The victim expressed that she was "terrified" during the encounter. Although the victim did not actually see a gun, she said that she was "completely convinced" that the defendant had a gun in his pocket based on "the way that it pointed in the pocket."

This court has frequently upheld an aggravated robbery conviction in cases where a defendant did not display a weapon but kept his hand in his pocket throughout the incident. See, e.g., State v. Joseph L. Johnson, Jr., No. M2007-01644-CCA-R3-CD, 2009 WL 2567729, at *8 (Tenn. Crim. App. Aug. 18, 2009), perm. to appeal denied (Tenn. Feb. 22,

2010); State v. Michael V. Morris, No. M2006-02738-CCA-R3-CD, 2008 WL 544567, at *5-6 (Tenn. Crim. App. Feb. 25, 2008), perm. to appeal denied (Tenn. Aug. 25, 2008); State v. Monoleto D. Green, No. M2003-02774-CCA-R3-CD, 2005 WL 1046800, at *8-10 (Tenn. Crim. App. May 5, 2005); State v. Lawrenzo Menton, No. W2002-00267-CCA-R3-CD, 2003 WL 21644936, at *12 (Tenn. Crim. App. July 2, 2003), perm. to appeal denied (Tenn. Dec. 15, 2003). In this case, the defendant's actions, coupled with his verbal threat, were sufficient for the jury to conclude that the defendant possessed a deadly weapon or an article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon.

With regard to the defendant's identity as the perpetrator of the robbery, the defendant argues that the evidence of identity was insufficient because the victim did not testify as to the type of pants or shirt the robber wore and because the robber wore a hat and sunglasses and the individuals in the photographic array did not. The identification of the defendant as the perpetrator of the crime is a question of fact for the jury. See State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993). A victim's identification of a defendant as the perpetrator of an offense is, alone, sufficient to establish identity. See State v. Hill, 987 S.W.2d 867, 870 (Tenn. Crim. App. 1998); Strickland, 885 S.W.2d at 87.

The victim testified that she recognized the defendant immediately when he walked in the door because she had a memorable encounter with him several years earlier. She said that the previous encounter occurred at the same hotel, in close proximity, and lasted ten to fifteen minutes. She testified that during the present encounter, she was in close proximity to the defendant for five minutes in well-lit conditions. On both occasions, the victim recognized that he spoke with a Somalian accent. The victim identified the defendant as the robber from a photographic array the day after the robbery and was 100% positive of her identification. She also identified the defendant at trial as the perpetrator. The jury heard the testimony concerning the victim's identification of the defendant and, by its verdict, accredited her testimony. Moreover, the jury was shown the surveillance videotape of the robbery and heard testimony from Detective Jeff Ball indicating that the defendant admitted that it was him on the videotape.

## II. Sentencing

The trial court conducted a sentencing hearing, at which the victim read a letter that she wrote six days after the robbery. In her letter, the victim related that she had been the victim of two hotel robberies committed by the defendant. She described both encounters as "horrific." She expressed disbelief that the defendant "only served a little under half of his original sentence and was within months . . . right back to the community and committing the same crimes." The victim testified that there was no indication that the

defendant was intoxicated during the second robbery.

In addition to the presentence report, the State also submitted, as proof of the defendant's range, certified copies of prior judgments against the defendant. The prior judgments included one for a December 21, 2002, Class B felony aggravated robbery out of Davidson County; a December 28, 2002, Class B felony aggravated robbery out of Davidson County; a December 28, 2002, Class B felony aggravated robbery out of Wilson County; and a December 28, 2002, Class C felony attempted aggravated robbery out of Wilson County.

When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2006). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). However, this court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance when testifying.

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statistical information provided by the administrative office of the courts as to Tennessee sentencing practices for similar offenses, (h) any statements made by the accused in his own behalf, and (i) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210; State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169.

As relevant here, a persistent offender is one who has "any combination of three (3) Class A or Class B felony convictions if the defendant's conviction offense is a Class A or B felony." Tenn. Code Ann. § 40-35-107(a)(2). As previously mentioned, aggravated

robbery is a Class B felony. In determining the number of prior convictions for the purpose of offender status, "[e]xcept for convictions for which the statutory elements include serious bodily injury, bodily injury, threatened serious bodily injury, or threatened bodily injury to the victim or victims, convictions for multiple felonies committed within the same twenty-four-hour period constitute one (1) conviction for the purpose of determining prior convictions[.]" Id. § 40-35-107(b)(4).

The defendant does not dispute that he has three prior Class B felony convictions. He only argues that the court erred in classifying him a persistent offender because two of the three offenses occurred within the same twenty-four-hour period. However, the defendant overlooks the exception to the twenty-four-hour rule for offenses with statutory elements including caused or threatened bodily injury or serious bodily injury. Again, aggravated robbery is "the intentional or knowing theft of property from the person of another by violence or putting the person in fear," id. § 39-13-401(a), "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon; or [w]here the victim suffers serious bodily injury." Id. § 39-13-402(a).

The record does not show whether the defendant's prior aggravated robbery convictions were based on his using or displaying a deadly weapon or the victim suffering serious bodily injury. Either way, the convictions are removed from the twenty-four hour merger rule. If the victims suffered serious bodily injury, such convictions clearly fall within the exception. If the defendant used or displayed a deadly weapon, "this court has held that a great potential for bodily injury necessarily exists whenever a deadly weapon is used." State v. Tyrone Cunningham, No. W2001-02941-CCA-R3-CD, 2003 WL 21729423, at *15 (Tenn. Crim. App. July 24, 2003), perm. to appeal denied (Tenn. Dec. 22, 2003) (citing State v. Nix, 922 S.W.2d 894, 903 (Tenn. Crim. App. 1995), and concluding that conviction for especially aggravated kidnapping fell under the exception to the twenty-four-hour merger rule regardless of whether it was aggravated by the use of a deadly weapon or the victim suffering serious bodily injury).

Moreover, this court has previously held that robberies occurring on the same day are not consolidated by the twenty-four-hour rule because robbery contains the statutory element that the defendant cause or threaten bodily injury or serious bodily injury in that fear constituting an element of robbery is fear of bodily injury. See State v. Darrell Johnson, No. W2008-01725-CCA-R3-CD, 2009 WL 1564808, at *2-3 (Tenn. Crim. App. June 3, 2009); see also State v. Iwanda Anita Buchanan, No. M2007-02870-CCA-R3-CD, 2008 WL 4467185, at *5 (Tenn. Crim. App. Oct. 6, 2008) (concluding that trial court properly counted robbery and aggravated assault convictions arising from the same transaction as separate convictions for purposes of determining offender status. This court noted that "[b]oth

robbery and aggravated assault contain elements that the defendant cause or threaten to cause bodily injury."). Thus, the trial court properly sentenced the defendant as a persistent offender.

The defendant also argues that the trial court erred in enhancing his sentence based on his criminal record. In imposing a specific sentence within a range, a trial court "shall consider, but is not bound by" certain advisory sentencing guidelines, including that the "minimum sentence within the range of punishment is the sentence that should be imposed" and that "[t]he sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors[.]" Tenn. Code Ann. § 40-35-210(c)(1), (2). The weighing of the various mitigating and enhancement factors is "left to the trial court's sound discretion." State v. Carter, 254 S.W.3d 335, 345 (Tenn. 2008).

Here, the trial court enhanced the defendant's sentence based on a finding that the defendant had a history of criminal convictions or criminal behavior in addition to those necessary to establish the range, Tenn. Code Ann. § 40-35-114(1); he failed to comply with the conditions of a sentence involving release into the community, id. § 40-35-114(8); and he was on parole at the time he committed the offense. Id. § 40-35-114(13). The defendant asserts that his criminal record was not "extensive" in that he only had two convictions in addition to those necessary to establish his range. Whether the defendant's criminal record qualified as "extensive" was not a statutory requirement for the court, in its discretion, to enhance the defendant's sentence. The presentence report shows that, in addition to the three prior aggravated robbery convictions that established the defendant's range, the defendant has prior convictions for attempted aggravated robbery, misdemeanor attempt to commit a felony, theft, and misdemeanor assault. Moreover, the record supports the trial court's application of the two other enhancement factors. We conclude that the trial court acted properly within its discretion in sentencing the defendant to thirty years.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgment of the trial court.

_____
ALAN E. GLENN, JUDGE